UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Jose Diaz,

        Plaintiff,

                                          09-3047

Carol Adams et al.,

        Defendants.

### Order

The plaintiff, a resident of Rushville Treatment and Detention Center, pursues constitutional claims that excessive force was used in the application of handcuffs to him, and that the defendants were deliberately indifferent to his injuries by delaying an MRI and nerve conduction study.  Before the Court are the defendants' respective motions for summary judgment. For the reasons below, summary judgment will be granted to all the defendants except for Rose.

### Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Any discrepancies in the factual record should be evaluated in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).  The party moving for summary judgment must show the lack of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial."  *See* Fed. R. Civ. P. 56(e).  In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party.  *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992).

### Undisputed Facts

These facts are set forth in the light most favorable to the plaintiff, for purposes of this order only.

The plaintiff is detained in Rushville Treatment and Detention Center pursuant to the Illinois Sexually Violent Persons Act.  On April 17, 2008, the plaintiff was taken on a writ with three other residents for court appearances in Kane County, about a 4 ½ hour drive.  Defendant Vaniter, a security officer, applied handcuffs to the plaintiff.  Sergeant Durant, who is not a defendant, oversaw

the application of handcuffs to the plaintiff and determined that the handcuffs were too loose. According to the complaint, a few days prior another resident had been able to escape handcuffs applied by Durant, which made Durant particularly sensitive to the issue.  Durant personally tightened the handcuffs on all three residents, remarking, "I'll be damned if I'm ever accused again of handcuffs being too loose."  The residents protested, but Durant informed everyone present that she had the support of the administration and no one would care about their complaints.

The residents were boarded into the transport van, accompanied by security guards Rose, Vaniter and Teel.  Defendant Rose was in charge.  The residents continued to complain about the cuffs, but Rose responded that Sergeant Durant had already checked them and that they would not be loosened.  The plaintiff informed Rose, Vaniter and Teel that he had had surgery on his wrist before and that the cuffs were causing him extreme pain, but the defendants still did nothing.  The prior surgery had been to remove a ganglion cyst from the plaintiff's right wrist.

At the courthouse, Defendant Rose escorted the plaintiff to his hearing, while Vaniter and Teel escorted the other residents.  Rose continued to refuse to adjust the cuffs or even look at the plaintiff's wrists, which had become significantly swollen.  The plaintiff maintains that Rose did agree to loosen the cuffs of the other two residents, but still refused to loosen the plaintiff's. (Plaintiff's Dep. p. 44).

On the trip back, Defendant Rose continued to refuse to adjust the cuffs.  When the group returned to Rushville, Defendant Vaniter saw the plaintiff's swollen and discolored hands and gasped, "Oh my God!"  (Complaint ¶ 29).  Removing the cuffs at that point was difficult because they were imbedded in Plaintiff's flesh.  Vaniter allegedly apologized and remarked several times, "This isn't right."  (Complaint ¶ 30).

About 60 days later, the plaintiff developed a large, painful knot on his right wrist and sought health care for it.  (Plaintiff's Dep. p. 20). On August 19, 2008, Defendant Dr. Lochard saw the plaintiff for complaints of pain to his right wrist.  Dr. Lochard diagnosed a return of the plaintiff's ganglion cyst, prescribed motrin and wrote a referral to an orthopod.  Dr. Lochard saw the plaintiff again on August 28, 2008, for his cyst.  The plaintiff reported that the cyst was painful and he requested medical restraints on his next writ.  Dr. Lochard prescribed Ultram and spoke to security about using soft medical restraints.  The notes also say referral to an orthopod.

On October 7, 2008, the plaintiff went to the Quincy Medical Group for a consultation with Dr. Morton.  Dr. Morton recommended an MRI and EMG/NCV of the wrist (nerve conduction study), and wrist splints.  Dr. Lochard signed off on the recommendations and checked the box to see the patient, which should have caused an employee in the healthcare unit to make an appointment for the plaintiff with Dr. Lochard.  This, however, was not done until February 2009, for reasons unknown.

On February 12, 2009, Dr. Lochard saw the plaintiff for his right wrist.  Dr. Lochard recommended an MRI and EMG/NCS of the wrist.  An MRI was done on March 18, 2009, and the plaintiff was diagnosed with carpal tunnel syndrome.  An EMG/NCS was done on March 23, 2009, which "reflected severe right denervating right carpal tunnel syndrome for which Dr. Mehra recommended surgery."  (d/e 35 ¶ 35).  Dr. Lochard referred the plaintiff for surgery on April 27,

2009.  The plaintiff had surgery in July, 2009, and has had no problems since.  (Plaintiff's Dep. pp. 24, 35).

*Analysis*

The plaintiff's handcuff claim is essentially an excessive force claim that falls under the due process clause of the Fourteenth Amendment.  This standard is not wholly objective, but the Fourth Amendment's objective standard is generally the place to start and can often serve to answer both the subjective and objective inquiry.  *Titran v. Ackman*, 893 F.2d 145, 147 (7th Cir.1990)( "[m]ost of the time the propriety of using force on a person awaiting trial will track the Fourth Amendment: the court must ask whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them."); *Wilson v. Williams,* 83 F.3d 870 (7th Cir. 1996)(fourth amendment objective factors were relevant to determining intent to punish pretrial detainee; force must be "objectively unreasonable in light of the facts and circumstances of the time,").  The court must keep in mind, however, that "the due process clause does not proscribe negligence or even gross negligence, . . . .[so] "the search for 'punishment' cannot be wholly objective." *Id.* (internal citations and quoted cites omitted).

The plaintiff avers that he was in obvious pain and that he pleaded with Defendant Rose to loosen the cuffs over a period of about 12 hours, but that Rose refused and would not even look at the plaintiff's hands, which the plaintiff maintains were visibly swollen.  According to the plaintiff, Rose did agree to loosen the other residents' cuffs, which creates an inference that Rose had that discretion.   In the court's opinion, these circumstances, viewed in the light most favorable to the plaintiff, give rise to a reasonable inference that Rose's refusal to loosen the cuffs was objectively unreasonable and amounted to excessive force.

None of the other defendants, however, can be held liable for Rose's alleged misconduct.  An individual is liable under § 1983 only if he or she was "'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 739 (7th Cir. 2001), *citing Chavez v. Illinois State Police*, 251 F.3d 612, 652 (7th Cir. 2001); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).  Personal responsibility means participating directly in the constitutional violation or directing the unconstitutional conduct.

Defendants Vaniter and Teel were present during the transport, heard the plaintiff's pleas, and presumably saw his swollen hands.  However, they did not have the authority to loosen the cuffs.  By the plaintiff's own admission, Rose was in charge of the writ.  (Complaint ¶ 32)("[a]lthough Defendants Vaniter and Teel were both Very simpathetic [sic] to my please for help during and after this writ, neither acted or did anything to assist me due to the fact Rose was the S.T.A. in charge of this writ.").  Vaniter did ask Rose to look at the plaintiff's hands during the transport, but the plaintiff contends that Vaniter and Teel should have done more, such as phoning a DHS administrator to seek permission to override Rose's decision and loosen the cuffs.  (Plaintiff's Dep. p. 43).  There are circumstances where the failure to intervene is actionable, such as when one guard stands and watches another guard beat an inmate, but the court does not believe that this is one of them.  Sergeant Durant, higher in rank to Vaniter and Teel, had personally tightened the handcuffs before the transport, and Rose was in charge of the writ during the

transport.  Thus, the two officers in control had already determined that the cuffs were properly fit. Vaniter and Teal had no realistic opportunity to override Rose's decision, in light of the hierarchy of command.  *See Miller v. Smith*, 220 F.3d 491, 495 (7th Cir.2000).

None of the other defendants were present during the transport or could be said to bear personal responsibility for the tight cuffs.  "The doctrine of *respondeat superior* can not be used to hold a supervisor liable for conduct of a subordinate that violates a plaintiff's constitutional rights." *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001), *citing Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).  There is no evidence that the conduct occurred with these defendants' knowledge and consent, or that they condoned such conduct.  There is no evidence of they even knew about it until after the fact.  *See Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988)(citations omitted).

The handcuff claim therefore survives for trial, but only as to Defendant Rose.

As for the claim against Defendant Lochard, the plaintiff does not have any evidence that would allow a rational juror to find that Dr. Lochard violated the plaintiff's constitutional rights by the alleged delay in obtaining the MRI or nerve conduction study.

Fourteenth Amendment protections are "'at least as great as the protections available to a convicted prisoner under the Eight Amendment.'"  *Tesch v. County of Green Lake*, 157 F.3d 465, 473-73 (7th Cir. 1998), *quoting City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983).  However, the Seventh Circuit has also stated that "'there is little practical difference between the two standards.  *Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir. 2001), *citing Weiss v. Cooley*, 230 F.2d 1027 (7th Cir. 2000); *Grieveson v. Anderson,* 538 F.3d 763, 771 (7th Cir. 2008)("Either way, the inquiry under both provisions of the Constitution is essentially the same.").  Accordingly, to get to trial the plaintiff must have evidence that Dr. Lochard was deliberately indifferent to his serious medical needs.  *Grieveson*, 538 F.3d at 779.

Delay in treating a painful condition that significantly restricts daily activities can violate the Constitution.  *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir.2007);  *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997).  Here, scheduling the MRI sooner might have resulted in having the surgery a few months earlier and thus saving the plaintiff those months of pain.

However, there is no evidence that the delay was intentional or caused by deliberate indifference.  Deliberate indifference is more than negligence or gross negligence–it "'approaches intentional wrongdoing,'"essentially a criminal recklessness standard, that is, ignoring a known risk.'"  *Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir. 2006).  The plaintiff asserts that Dr. Lochard intentionally lied about having scheduled the MRI, but there is no evidence of that in the record other than the plaintiff's speculation.  Dr. Lochard had already sent the plaintiff for a consult, agreed with the recommendations, and checked the box to schedule an appointment with the plaintiff.  That scheduling fell through the cracks for some reason, but that is not evidence of deliberate indifference.  At most, it is evidence of negligence, which does not violate the Constitution.  The plaintiff could have alerted the health care staff of this oversight by filing a health care request for the MRI, but the court does not see one in the record.  The health care

requests in the record relate to other problems or the recommended surgery after the plaintiff had his MRI.  *See* d/e 40, Exhibits attached.  There is no evidence of intentional stalling on anyone's part.  To the contrary, the record shows that Dr. Lochard was conscientious in getting the plaintiff to an outside consult, and that he agreed to and did follow all of those outside recommendations.  Because there is no evidence that Dr. Lochard was deliberately indifferent, summary judgment is mandated for him on the medical claim, as well as for the other defendants.

**IT IS THEREFORE ORDERED:**

1) The motion for summary judgment by Dr. Lochard is granted (d/e 35).  At the close of the case, the clerk is directed to enter judgment in favor of Dr. Lochard and against the plaintiff.

2) The motion for summary judgment by the DHS defendants is granted in part and denied in part (d/e 32).  Summary judgment is granted to Defendants Adams, Bednarz, McAdory, Phillips, Teel, and Vaniter.  At the close of the case, the clerk is directed to enter judgment in favor of the aforesaid defendants and against the plaintiff.  Summary judgment is denied to Defendant Rose on the plaintiff's claim that Rose's failure to loosen the handcuffs violated the plaintiff's constitutional rights.

3) A final pretrial conference is scheduled for March 11, 2011 at 9:30 a.m. by video conference.  The parties are directed to submit the proposed final pretrial order five working days before the final pretrial conference.  The defendants are reminded that they bear the responsibility for preparing the proposed final pretrial order pursuant to Local Rule 16.3-4(H).

4) The proposed final pretrial order must include the names of all witnesses to be called.  Residents of Rushville (other than the plaintiff) who will be witnesses shall appear by video conference.  Employees of Rushville (other than the defendant) may appear by video conference.  The parties are responsible for timely requesting subpoenas for nonparty witnesses who are not employees or residents of Rushville.  The parties are responsible for serving the subpoena and providing applicable witness and mileage fee.

4) A jury trial is scheduled for April 4, 2011, at 9:00 a.m. at the U.S. Courthouse, 201 S. Vine St., Urbana, IL.  The plaintiff and the defendants shall appear in person before the court sitting in Urbana.  The Clerk is directed to issue appropriate process for the personal appearance of the plaintiff at the trial and the video appearance of the video witnesses.

Enter this 24th day of August 2010.

**\s\Harold A. Baker**

_____

HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE